**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

EDCA E.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Civil Action No. 20-20557 (SDW)

**OPINION**

March 30, 2022

**WIGENTON**, District Judge.

Before this Court is Plaintiff Edca E.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Kenneth Ayers's ("ALJ Ayers") denial of Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Ayers's factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by her first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

## I.      PROCEDURAL AND FACTUAL HISTORY

### A.      Procedural History

Plaintiff filed for DIB and SSI in May 2018, alleging disability beginning on December 15, 2015, due to fibromyalgia, diabetes, sleep apnea, high blood pressure, anxiety, and depression. (D.E. 5 (Administrative Record ("R")) at 13, 19.)  The state agency denied Plaintiff's applications at the initial and reconsideration levels.  (R. 13.)  Plaintiff received a hearing and testified before ALJ Ayers on April 3, 2020.  (*Id.*)  The ALJ issued a written decision on April 20, 2020, finding that Plaintiff was not disabled.  (R. 22.)  Plaintiff subsequently filed the instant appeal in this Court and the parties completed briefing.  (D.E. 1, 10, 11.)  Plaintiff did not file a reply.

### B.      Factual History

Plaintiff is 49 years old and worked as a housecleaner for 15 years, until December 2015. (*See* R. 19, 36.)  This work required Plaintiff to stand, walk, lift, and carry up to 40 pounds.  (R. 19.)  She has a high school education that she completed in Venezuela, and she cares for her young son and grandson.  (R. 19, 247–48, 334, 387.)  The following is a summary of the relevant medical evidence in the record.

In January 2017, Plaintiff saw her rheumatologist, David Widman, M.D., who diagnosed her with fibromyalgia and arthritis.  (R. 424.)  Dr. Widman noted that Plaintiff's hand, pelvis, and hip were within the normal range for fibromyalgia, and he did not note any gait issues.  (R. 426.)  He treated Plaintiff with a series of steroid injections in the bilateral trochanteric bursae and knees and with Cymbalta and Elavil for her fibromyalgia.  (R. 395–97.)   In October 2017, Dr. Widman noted some improvements in Plaintiff's knees, a good response to the trochanteric bursae injections, and normal coordination.  (R. 398–400.)  Plaintiff met again with Dr. Widman in June 2018; his examination showed normal coordination and no evidence of any significant motor

function limitations.  (R. 387–91.)  Dr. Widman's examination found Plaintiff's fibromyalgia at multiple trigger points to be within normal limits and he did not find any functional limitations. (*Id.*)  In fact, Dr. Widman reported that Plaintiff's gait, range of motion, muscle strength and muscle tone continued to be normal throughout 2018.  (*See, e.g.*, R. 326, 376, 389, 442, 451.)

Separately, Plaintiff saw her cardiologist, Stephen Littman, M.D., on May 5, 2017.  (R. 360.)  Dr. Littman noted in his examination that Plaintiff had a history of fibromyalgia and that she reported pain symptoms in multiple sites.  (R. 360–362.)  He diagnosed her with morbid obesity, but his examination findings were otherwise mostly within normal limits.  (*Id.*)

 Plaintiff met with her primary care provider, Anthony Lucatorto, D.O., on May 18, 2018. (R. 356.)  Dr. Lucatorto's report noted that Plaintiff weighed 238 pounds and that she had a normal range of motion.  (R. 357.)  On July 12, 2018, Dr. Lucatorto completed a General Medical Report indicating that he had treated Plaintiff monthly since March 2005.  (R. 435–37.)  In his report, he assessed that Plaintiff had no limitations in her ability to perform work-related activities and no limitations in lifting, carrying, standing, walking, sitting, pushing, or pulling.  (R. 436.)

In November 2018, state agency physician Nancy Simpkins, M.D., reviewed Plaintiff's medical records and found that Plaintiff could perform light work.  (R. 80–81, 90–92.)  State agency physician Howard Goldbas, M.D., also reviewed Plaintiff's medical records in March 2019 and reached the same conclusion. (R. 68–71, 104–07.)  Dr. Goldbas explained that Plaintiff's treatment records showed "no major limitation in neuromuscular function."  (R. 69, 105.)

C.    **Hearing Testimony**

Plaintiff appeared with her attorney at a telephone hearing before ALJ Ayers on April 3, 2020.  (R. 13.)  Plaintiff testified that she had a history of fibromyalgia and that she could only stand for 15 minutes before needing to sit down because her feet and heels hurt.  (R. 38, 40.)  She

also testified that she cannot walk one block without resting and that she experiences shoulder pain that affects her ability to move her arms and wash her hair.  (R. 41.)  Plaintiff further testified about her history of obesity.  (R. 44.)  She testified that she was 5'6", weighed 240 pounds before her bariatric surgery, and now weighed 200 pounds.  (R. 37, 44.)  Plaintiff additionally testified that she was limited in her abilities to lift, stand, and walk, but she attributed these limitations to her fibromyalgia and arthritis, not her obesity.  (R. 37–38.)

An impartial vocational expert, Michael Smith ("VE Smith"), also testified at the hearing. VE Smith testified that, given Plaintiff's limitations as assessed by the ALJ, Plaintiff could perform her past work as a house cleaner as it is generally performed.  (R. 47–50; *see also* R. 22.)

## II.    LEGAL STANDARD

### A.    Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted).  Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'"  *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  However, if

the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

**B.      The Five-Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment" lasting continuously for at least twelve months.  42 U.S.C. § 423(d)(1)(A).  The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged."  42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480.  If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910.  If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or a combination

of impairments is not severe when medical and other evidence establishes only a slight abnormality

or combination of abnormalities that would have a minimal effect on an individual's ability to

work.  20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p.  An

impairment or a combination of impairments is severe when it significantly limits the claimant's

"physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If

a severe impairment or combination of impairments is not found, the claimant is not disabled.  20

C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   If the ALJ finds a severe impairment or

combination of impairments, the ALJ then proceeds to step three.

      Under step three, the ALJ determines whether the claimant's impairment or combination

of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If

an impairment or combination of impairments meets the statutory criteria of a listed impairment

as well as the duration requirement, the claimant is disabled and entitled to benefits.  20 C.F.R. §§

404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments

does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ

proceeds to the next step.

      Before undergoing the analysis in step four, the ALJ must determine the claimant's residual

functional capacity ("RFC").  20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e).  An

individual's RFC is the individual's ability to do physical and mental work activities on a sustained

basis despite limitations from his or her impairments.  20 C.F.R. §§ 404.1545, 416.945.  The ALJ

considers all impairments in this analysis, not just those deemed to be severe.  20 C.F.R. §§

404.1545(a)(2), 416.945(a)(2); SSR 96-8p.  After determining a claimant's RFC, step four then

requires the ALJ to determine whether the claimant has the RFC to perform the requirements of

his or her past relevant work.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  If the claimant is able

to perform his or her past relevant work, he or she will not be found disabled under the Act.  20

C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).  If the claimant is unable

to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work,

considering his or her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  Unlike in the first four steps of the analysis where the claimant bears the burden

of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing

evidence that demonstrates that other work exists in significant numbers in the national economy

that [the claimant] can do, given [the claimant's RFC] and vocational factors."  20 C.F.R. §§

404.1560(c)(2), 416.960(c)(2).  If the claimant is unable to do any other SGA, he or she is disabled.

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.   DISCUSSION

### A.     The ALJ's Decision

On April 20, 2020, ALJ Ayers issued a decision concluding that Plaintiff was not disabled

from December 15, 2015 (the "alleged onset date") through the date of the decision.  (R. 22.)  At

step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the

alleged onset date.  (R. 15.)  At step two, the ALJ found that Plaintiff had the following severe

impairments: obesity and fibromyalgia.  (*Id.*)  At step three, the ALJ concluded that Plaintiff's

severe impairments did not meet or medically equal the listings.  (R. 17–18.)

Prior to step four, ALJ Ayers assessed Plaintiff's RFC and found that Plaintiff could

perform light work with the following restrictions:

> [T]he claimant . . .  [is only capable of] lifting 20lbs occasionally and 10lbs
> frequently[,] carrying 20lbs occasionally and 10lbs frequently; sitting for 6hrs,

standing for 6hrs, walking for 6hrs; and pushing and pulling as much as she can lift/carry. The claimant can occasionally reach overhead on the left, and occasionally reach overhead on the right. The claimant can reach frequently on the left and the right in all other directions. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, never crawl. The claimant can never work at unprotected heights, never work around hazardous moving mechanical parts, can work in humidity and wetness occasionally, in dust, odors, fumes and pulmonary irritants occasionally, in extreme cold occasionally, in extreme heat occasionally.

(R. 18.)  At step four, the ALJ found that someone with Plaintiff's RFC could perform Plaintiff's past job as a cleaner (housekeeping) as it is generally performed.  (R. 21–22.)  ALJ Ayers therefore concluded that Plaintiff was not disabled under the Act during the relevant period.  (R. 22.)

### B.    Analysis

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision.  (*See* D.E. 10 at 9–10.)  Plaintiff contends that ALJ Ayers (1) failed to properly consider Plaintiff's obesity; (2) failed to properly consider Plaintiff's fibromyalgia; and (3) improperly relied on VE Smith's answer to a hypothetical that failed to include all of Plaintiff's limitations as supported by substantial evidence.  (*See* D.E. 10 at 10–29.)  This Court considers the arguments in turn and finds each unpersuasive.

First, Plaintiff contends that substantial evidence does not support the ALJ's determination that her obesity in combination with her other impairments did not meet or equal a listing.  (*See* D.E. 10 at 10–17.)  "[A]n ALJ must meaningfully consider the effect of a claimant's obesity individually and in combination with her impairments" when assessing a social security claim at step three and beyond.  *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).  However, it is the plaintiff's burden to establish not just that "obesity *can* impair [her] ability to perform basic work activities," but to "specify[] *how* her obesity . . . affected her ability to perform basic work activities."  *Carter v. Comm'r of Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020).

Here, at step two, the ALJ explained that Plaintiff's obesity was a severe impairment because it significantly limited her ability to perform basic tasks. (R. 15.) However, at later steps, the ALJ noted that obesity alone is not a listed impairment and considered obesity in the context of the overall record and in relation to Plaintiff's other severe impairments, according to SSR 19-2p. (R. 18.) In doing so, ALJ Ayers determined that Plaintiff's obesity had not caused her other impairments, such as fibromyalgia, to rise to the level of meeting or medically equaling a listing. (*Id.*) The ALJ also considered Plaintiff's obesity in determining her RFC, finding that Plaintiff was only capable of light work with many additional restrictions, including lifting, carrying, pushing, and pulling only 20lbs occasionally and 10lbs frequently, and sitting, standing, and walking for only 6 hours. (R. 18–21.) Notably, the ALJ's RFC limitations were far more generous than what Plaintiff's primary treating physician, Dr. Lucatorto, recommended when he assessed that Plaintiff had no limitations in her ability to perform work-related activities and no limitations in her abilities to lift, carry, stand, walk, sit, push, or pull. (R. 436.) As the ALJ observed, while Plaintiff's medical records "note[] a history of morbid obesity," they also show that Plaintiff "walked with a normal gait and had a full range of motion in all extremities on repeat examination." (R. 20; *see e.g.*, R. 289, 291, 320, 323, 326, 350, 376, 389, 405, 442, 451, 459–60, 463, 485.)

Notably, while Plaintiff testified that she had a history of weight issues, she did not attribute her limitations to her obesity and even testified that she lost weight after her bariatric surgery. (R. 37–38, 44.) On appeal, instead of presenting medical evidence that her obesity in combination with her other impairments equals a listing or precludes her from her past relevant work, Plaintiff simply argues that ALJ Ayers did not adequately consider her obesity. (*See* D.E. 10 at 15–17.) However, "remand . . . is not required" when a plaintiff relies on black letter law "stating that obesity *can* impair one's ability to perform basic work activities rather than specifying *how* her

obesity . . . affected her ability to perform basic work activities." *Carter*, 805 F. App'x at 143. "[E]ven [if] the Court were to find that a portion of the ALJ's [] analysis was deficient, Plaintiff nevertheless fails to meet her burden of presenting sufficient evidence that her medical problems were of listing severity such that the outcome would have been different if the ALJ had been more thorough." *Soto v. Comm'r of Soc. Sec.*, Civ. No. 18-14165, 2020 WL 7022652, at *4 (D.N.J. Nov. 30, 2020). Remand is therefore not warranted on this basis.

Second, Plaintiff contends that substantial evidence does not support the ALJ's determination that her fibromyalgia did not equal a listing. (*See* D.E. 10 at 17–21.) There is no special threshold for fibromyalgia cases: SSR 12-2p, 2012 WL 3104869, "makes clear that the fibromyalgia is evaluated under the same well-established sequential evaluation process as all other impairments." *Martinez v. Colvin*, Civ. No. 14-1090, 2015 WL 5781202, at *13 (M.D. Pa. Sept. 30, 2015) (explaining that "[t]he ruling merely acts as a guide for the analysis of these challenging claims under the existing regulations"). SSR 12-2p further provides that, "[a]s in all claims for disability benefits, we need objective medical evidence to establish the presence of an MDI [medically determinable impairment]." SSR 12-2p, 2012 WL 3104869, at *2–3.

Here, ALJ Ayers first considered records from Dr. Widman that supported a diagnosis of fibromyalgia. (R. 20.) Indeed, Plaintiff reported multiple times to Dr. Widman that she experienced painful symptoms of fibromyalgia on her back, neck, shoulder, and arm. (*Id.*) However, Dr. Widman's records and the other medical records discussed above show that Plaintiff's gait, muscle strength, muscle tone, and range of motion were generally normal. Notably, Plaintiff does not cite to any medical provider's opinion from the relevant time period that supports finding functional limitations that the ALJ did not already include in his RFC assessment. This Court will therefore give the ALJ's fibromyalgia analysis the deference it is due.

Third, Plaintiff argues that the ALJ's RFC assessment is unsupported by substantial evidence and that the ALJ improperly relied on VE Smith's answer to a hypothetical that failed to include all of Plaintiff's limitations.  (*See* D.E. 10 at 22–23.)  VE Smith testified that a person with Plaintiff's RFC, as assessed by ALJ Ayers, could perform her past relevant work as a housekeeper as it is generally performed.  (R. 47–50; *see also* R. 22.)  Plaintiff criticizes the ALJ for relying on the vocational expert's answer to a hypothetical that did not include all of her alleged limitations, including limitations related to her obesity and fibromyalgia.  (*See* D.E. 10 at 26–28.)  However, the Third Circuit has held that an ALJ's hypothetical question to a vocational expert need only reflect the functional limitations that are already established.  *See Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014); *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).  Where "a limitation is supported by some medical evidence but controverted by other evidence in the record, it is within the ALJ's discretion whether to submit the limitation to the VE." *Zirnsak*, 777 F.3d at 615 (quoting *Rutherford*, 399 F.3d at 554) (internal citations omitted).

Here, the hypothetical at issue was consistent with Dr. Widman's and Dr. Littman's evaluations that Plaintiff's limitations were within the normal range and with Dr. Lucatorto's evaluation that Plaintiff had no functional limitations.  For the reasons discussed above in connection with this Court's review of the ALJ's obesity and fibromyalgia analyses, the ALJ's RFC determination and hypothetical question captured Plaintiff's credibly established functional limitations.  The ALJ's reliance on VE Smith's answer to that question in reaching his disability determination was therefore not improper.  Where, as here, substantial evidence—*i.e.*, more than a mere scintilla of evidence—supports the ALJ's RFC finding and disability decision, that decision will be affirmed.

IV.    **<u>CONCLUSION</u>**

For the foregoing reasons, this Court finds that ALJ Ayers's factual findings were supported by substantial credible evidence in the record and that his legal determinations were correct.  The Commissioner's determination is therefore **AFFIRMED**.  An appropriate order follows.


<u>s/ *Susan D. Wigenton*      </u>
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**


Orig:   Clerk
cc:      Parties